UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| DEWAYNE SANDERS, | ) | |
| Plaintiff, | ) ) ) | No. 6:24-CV-055-REW |
| v. | ) ) | |
| STEPHANIE SUMNER *et al.*, | ) ) | OPINION & ORDER |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Federal inmate Dewayne Sanders, proceeding *pro se*, filed a civil complaint against the United States and three prison officials employed at USP McCreary, the institution where Sanders was previously confined.[1] Defendants filed a motion to dismiss or, in the alternative, for summary judgment. *See* DE 26 (Motion). Sanders responded in opposition, *see* DE 28, and Defendants replied. *See* DE 29. Thus, this matter is ripe for resolution. For the reasons outlined below, the Court **GRANTS** DE 26 and **DISMISSES** Sanders's claims.

I.  **BACKGROUND**

Sanders is serving a 90-month term of imprisonment for possession with intent to distribute cocaine and for possession of a firearm in furtherance of that drug trafficking crime. *See United*

---

[1] Sanders filed his initial Complaint on April 26, 2024, alleging that Defendants Sumner and Keith violated his constitutional rights by failing to assign him a lower-level cell in light of his visual limitations. *See* DE 1 (Complaint). The Court directed Sanders to refile his Complaint using a Court-approved form, and to further provide additional facts about his case. *See* DE 4 (Order). On June 28, 2024, Sanders filed an Amended Complaint in which he (a) elaborated on his claims against Sumner and Keith, (b) alleged that Defendant VanHook "rushed" him down the stairs causing him to fall, and (c) alleged a claim against the United States under the Federal Tort Claims Act. *See* DE 5 (First Amended Complaint). Finally, on October 17, 2024, Sanders filed a one-page addendum docketed as an Amended Complaint in which he specified his demand for damages. *See* DE 12 (Second Amended Complaint). In the interest of construing Sanders's *pro se* submissions liberally, the Court considers all of these pleadings together as the operative Complaint. *See* DE 13 (Screening Order).

*States v. Sanders*, 2:19-cr-20205-MSN-16, Docket Entry 526 (W.D. Tenn. Nov. 2, 2020). He was confined at USP McCreary from December 18, 2020, through October 24, 2024. *See* DE 26-2 ¶ 3 (Robin Eads Declaration).

Sanders alleges the following: Upon his arrival at USP McCreary, Sanders informed Defendant Stephanie Sumner, a nurse practitioner, that he was legally blind. *See* DE 28 at 2. Despite knowing about Sanders's visual impairment, Sumner did not assign Sanders to the lower level in his housing unit. Sanders underwent cataract surgery in November 2021, which further impaired his vision. He continued to complain about his housing assignment to Sumner and Defendant Noel Keith, a Unit Counselor, but neither moved him to the lower level.

On April 10, 2022, Defendant Kaytlin VanHook, a Senior Officer Specialist, purportedly rushed Sanders down the stairs to go to the cafeteria. Sanders tripped on the stairs and suffered several abrasions and a bruised knee. He also claims that the fall caused a macular hole in his eye to enlarge to the point that he can no longer have corrective surgery. In January 2023, Sanders was transferred to a cell on the lower level of the housing unit.

Sanders contends that Sumner's, Keith's, and VanHook's actions constitute (1) violations of their Bureau of Prisons (BOP) duties under 18 U.S.C. § 4042 and (2) deliberate indifference to his serious medical needs in violation of the Fifth, Fourteenth, and Eighth Amendments. *See* DE 5 at 4–5. For relief, Sanders seeks monetary damages from these defendants under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 91 S. Ct. 1999 (1971). Sanders also asserts a claim for damages against the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680. Finally, Sanders seeks a sentence reduction and a Court order directing that Sumner, Keith, and VanHook be removed from their positions.[2] On January 24,

---

[2] As the Court noted in its amendment order, DE 11, the removal request is a legal impossibility under the causes of action alleged. And, sentence reduction can only occur under § 3582, which is not here at issue.

2025, Defendants filed the present motion to dismiss or, in the alternative, motion for summary judgment. *See* DE 26. For the reasons outlined below, the Court **GRANTS** DE 26.

## II. STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S. Ct. at 1964–65. Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Yet, courts need not accept "legal conclusion[s] couched as [] factual allegation[s]." *Papasan v. Allain*, 106 S. Ct. 2932, 2944 (1986). Hinging on Rule 8's minimal standards, *Twombly* and *Iqbal* require a plaintiff to "plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). Where a plaintiff states "simply, concisely, and directly events that . . . entitle[] [her] to damages," the rules require "no more to stave off threshold dismissal for want of an adequate statement." *Id.*; *see El-Hallani v. Huntington Nat'l Bank*, 623 F. App'x 730, 739 (6th Cir. 2015) ("Although *Twombly* and *Iqbal* have raised the bar for pleading, it is still low.").

Rule 12(d) provides that, where the Court considers and relies upon matters outside the pleadings, a motion to dismiss under Rule 12 "must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). Since the Court has considered the documents attached to Defendants' motion, the Court will treat the motion as one for summary judgment. *See Soper v.*

3

*Hoben,* 195 F.3d 845, 850 (6th Cir. 1999). Consistent with Rule 12(d), Defendants' motion placed Sanders on notice that matters outside the pleadings could be considered, and he was given a reasonable opportunity to present outside material that he believed was relevant to the motion.

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether a genuine dispute exists, the Court considers all facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Avantax Wealth Mgmt., Inc. v. Marriott Hotel Servs., Inc.*, 108 F.4th 407, 414 (6th Cir. 2024) (citing *Huckaby v. Priest*, 636 F.3d 211, 216 (6th Cir. 2011)). Furthermore, the Court may not "weigh evidence [or] determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." *Id.* "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Id.* at 2552.

A fact is "material" if the underlying substantive law identifies the fact as critical. *See Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* An issue is "genuine" only if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that

4

party." *Id.* at 2511 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 88 S. Ct. 1575, 1592 (1968)). Such evidence must be of a type suitable for admission into evidence at trial. *See Salt Lick Bancorp v. Fed. Deposit Ins. Corp.*, 187 F. App'x 428, 444–45 (6th Cir. 2006).

### III. ANALYSIS

#### A. *Bivens* Claims

Sanders claims that Defendants were deliberately indifferent to his serious medical needs by failing to assign him to lower-level housing (Sumner and Keith) and by rushing him down the stairs (VanHook). He contends the actions exposed him to the risk of falling, which occurred in April 2022. These claims necessarily arise under the Eighth Amendment since Sanders was a convicted prisoner at the time the alleged conduct occurred. *See Coleman v. Hamilton Cnty. Bd. of Cnty. Comms.*, 130 F.4th 593, 599 (6th Cir. 2025) ("Corrections officers must protect convicted prisoners from harm under the Eighth Amendment, and they must protect pretrial detainees from harm under the Due Process Clause.") (citing *Lawler ex rel. Lawler v. Hardeman Cnty.*, 93 F.4th 919, 926 (6th Cir. 2024)).

Defendants move to dismiss Sanders's Eighth Amendment claims in light of the Supreme Court's decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022) and related authority. Specifically, Defendants contend, under the *Egbert* rubric, that Sanders's claims arise in new contexts, and that special factors counsel against extending *Bivens* to permit his claims. Sanders obliquely responds to this argument by reiterating that Defendants' conduct constitutes deliberate indifference to his serious medical needs under established authority such as *Estelle v. Gamble*, 97 S. Ct. 285 (1976). However, Sanders did not respond to Defendants' assertion that there is no private cause of action for damages under *Egbert* and related cases in the particular scenario presented. Despite Sanders's

5

failure to respond to Defendants' primary argument, the Court has considered the issue and agrees that Sanders's constitutional claims are new claims and are not cognizable in this context.

### 1. Contours of *Bivens*

Constitutional claims for damages against individual federal officers may be pursued (if at all) pursuant to *Bivens*, which holds that an individual may "recover money damages for any injuries he has suffered as a result of [federal] agents' violation of" his constitutional rights. 91 S. Ct. at 2005. The *Bivens* remedy is judicially created and is only implied in limited circumstances. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854–55 (2017). Since *Bivens* was decided in 1971, the Supreme Court has recognized a private damages remedy for a constitutional violation in only three circumstances: (1) where federal officials searched a private residence without probable cause, in violation of the Fourth Amendment, *see Bivens*, 91 S. Ct. at 2005; (2) where a Congressman terminated an employee on the basis of gender, in violation of the Fifth Amendment, *see Davis v. Passman*, 99 S. Ct. 2264, 2279 (1979); and (3) where prison officials displayed deliberate indifference to a prisoner's serious medical needs, in violation of the Eighth Amendment, *see Carlson v. Green*, 100 S. Ct. 1468, 1474–75 (1980). *See Ziglar*, 137 S. Ct. at 1854–55 ("These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.").

The Court, under strict Supreme Court direction, employs a two-step test to determine if *Bivens* provides a remedy for alleged misconduct by federal officials. *See Hernández v. Mesa*, 140 S. Ct. 735, 743 (2020). First, the Court must decide if the plaintiff's claim presents a "'new context' or involves a 'new category of defendants'" for the application of *Bivens*. *See id.* (quoting *Corr. Servs. Corp v. Malesko*, 122 S. Ct. 515, 520 (2001)). If the claim arises in a new context,

the Court then considers whether there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson*, 100 S. Ct. at 1471).

Since *Carlson* was decided over 40 years ago, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernández*, 140 S. Ct. at 743 (collecting cases); *see also Malesko*, 122 S. Ct. at 520 ("Since *Carlson* we have consistently refused to extend *Bivens* liability to any new context or new category of defendants."). Moreover, the Supreme Court's clear directive is that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857 (quoting *Iqbal*, 129 S. Ct. at 1948).

### a. New Context

The Court must first determine whether Sanders's claims are "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Ziglar*, 137 S. Ct. at 1859. A case could be meaningfully different because of the constitutional right at issue, the extent of judicial guidance with respect to how an officer should respond to the problem at issue, or the "presence of potential special factors that previous *Bivens* cases did not consider." *Id.* at 1859–60. The Sixth Circuit has instructed that "[t]he context is new if it differs in virtually any way from the *Bivens* trilogy." *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021) (citing *Ziglar*, 137 S. Ct. at 1859).

Of the three cases in the *Bivens* trilogy, *Carlson* is the most obvious rough analog, since it also involved a claimed Eighth Amendment violation based on deliberate indifference to a serious medical need. However, the instant matter is sharply distinguishable from *Carlson*. There, the plaintiff sued individual prison officials, alleging that the officials were deliberately indifferent to the serious medical needs of her son, who suffered an asthma attack and died while incarcerated in a federal prison. *See Carlson*, 100 S. Ct. at 1470 n.1. As summarized by the Supreme Court:

7

> More specifically, respondent alleged that petitioners, being fully apprised of the gross inadequacy of medical facilities and staff at the Federal Correction Center in Terre Haute, Ind., and of the seriousness of Jones' chronic asthmatic condition, nonetheless kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital. The complaint further alleges that Jones' death resulted from these acts and omissions, that petitioners were deliberately indifferent to Jones' serious medical needs, and that their indifference was in part attributable to racial prejudice.

*Id.*

Sanders's allegations meaningfully and in multiple ways differ from those in *Carlson*. First, his claim that VanHook "rushed" him down the stairs bears no resemblance to the plaintiff's claim of inadequate medical treatment in *Carlson. Cf. Anderson v. Fuson*, No. 23-5342, 2024 WL 1697766, at *3 (6th Cir. Feb. 1, 2024) (observing that plaintiff's Eighth Amendment excessive-force claims arose in a new context under *Bivens*); *Greene v. United States*, No. 21-5398, 2022 WL 13638916, at *3 (6th Cir. Sept. 13, 2022) (concluding that Eighth Amendment failure-to-protect claim was not cognizable under *Bivens*). Indeed, he alleges no notice to VanHook regarding his alleged blindness. That she urged him toward the cafeteria, with no contention regarding her knowledge of any limitation, is far afield of any *Carlson* theory.

While Sanders's allegations against Sumner and Keith create a closer parallel, his claim concerning cell assignment is distinguishable from the claim in *Carlson*, which concerned the deprivation of basic medical care for an acute medical emergency that resulted in the prisoner's death. Unlike the prisoner in *Carlson*, Sanders does not in any manner allege that he was denied medical care for a specific and serious medical need. Instead, he contends that Sumner and Keith denied him a particular housing assignment that would have been safer, given his claimed visual limitations.

8

The Eighth Amendment requires prison officials to provide inmates with basic human needs, including medical care and shelter. *See Farmer v. Brennan*, 114 S. Ct. 1970, 1976 (1994). However, prisoners are not constitutionally guaranteed comfortable prisons. *Rhodes v. Chapman*, 101 S. Ct. 2392, 2400 (1981)). Accordingly, an Eighth Amendment conditions-of-confinement claim must be based upon an "serious deprivation" such that the prisoner has been deprived of "the minimal civilized measure of life's necessities." *See id.* at 2399. Moreover, decisions regarding housing, such as cell assignments, have traditionally been left to the sound discretion of prison officials. *See Quick v. Mann*, 170 F. App'x 588, 590 (10th Cir. 2006) (citing *Bell v. Wolfish*, 99 S. Ct. 1861, 1875 n.23 (1979)). Because even a "modest extension" of a prior Supreme Court case constitutes a new context, inferring a damages remedy for the circumstances here would create a novel cause of action under *Bivens*.

Note again, comparing *Carlson*, that Sanders does not allege a treatment deprivation. Instead, his basically is a claim of a) known medical limitation and b) BOP staff's failure to accommodate or take into account that limitation through proper cell assignment. Exposure to risk via cell placement is not a *Carlson* claim, and the expansion into a broad new area clearly would exceed the *Egbert* limits. *See, e.g.*, *Sargeant v. Barfield*, 87 F.4th 358, 367 (7th Cir. 2023) (rejecting *Bivens* claim for risky cell assignment: "Recognizing failure-to-protect claims against prison officials responsible for cell assignments under *Bivens* will invariably implicate housing policies, which factor in a sensitive mixture of things we are ill-positioned to assess—a prison's determinations about safety, discipline, and resources."), *cert. denied*, 145 S. Ct. 285 (2024); *Prucha v. Watson*, 672 F. Supp. 3d 642, 650 (S.D. Ind. 2023) (rejecting *Bivens* claim based on failure to accommodate hearing disability: "The Court must first determine whether Mr. Prucha's claims arise in a new context. Although Mr. Prucha brings Eighth Amendment claims like the

9

plaintiff in *Carlson*, the context is different because it involves accommodations for a chronic hearing disability, not the actions of staff in the midst of a medical emergency. . . . The Court finds that Mr. Prucha's Eighth Amendment claims related to accommodations for his hearing disability present a new context."). The novelty of Sanders's theory, relative to *Carlson*, is inarguable.

### b. Special Factors

Since Sanders's allegations constitute a new context for implying a remedy under *Bivens*, the Court must consider whether there are special factors that counsel against extending the remedy to Sanders's claims. Clearly, the answer is yes. As often noted, Congress long ago created a statutory cause of action against state actors who violate the constitution. *See* 42 U.S.C. § 1983. But it has never enacted an analogous statute for constitutional violations by federal actors. To the contrary, Congress has taken steps to curtail prisoner litigation—not expand it.

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the Act's exhaustion provisions would apply to *Bivens* suits. But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Ziglar*, 137 S. Ct. at 1865 (citations omitted).

Additionally, federal prisoners have alternative means to vindicate their constitutional rights. The BOP's inmate grievance program provides a ready and viable mechanism to challenge staff misconduct. *See Malesko*, 122 S. Ct. at 523. This remedy is not considered less effective simply because it is a creature of regulation rather than statute. *See Egbert*, 142 S. Ct. at 1807 ("So long as Congress *or the Executive* has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by

10

superimposing a *Bivens* remedy.") (emphasis added); *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020) (citing *Minneci v. Pollard*, 132 S. Ct. 617, 623 (2012)) ("Alternative processes, for *Bivens* purposes, do not have to be creations of Congress."). Nor is the grievance program considered a less effective remedy merely because it does not provide the deterrence afforded by damages. *See Schweiker v. Chilicky*, 108 S. Ct. 2460, 2467 (1988) ("The absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."). Thus, courts have consistently held that the BOP's inmate grievance program provides a viable alternative that counsels against inferring a *Bivens* remedy. *See Callahan*, 965 F.3d at 524; *see also Freedland v. Mattingly*, No. 1:20-cv-81, 2021 WL 1017253, at *8 (M.D. Pa. Mar. 17, 2021) (collecting cases).

The threat of an investigation through the BOP's Internal Affairs Office or the Department of Justice's Office of the Inspector General also may serve to deter misconduct on the part of prison officials. *See Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at *3 (6th Cir. Aug. 31, 2022). "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Ziglar*, 137 S. Ct. at 1858); *see also Malesko*, 122 S. Ct. at 521 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.").

Finally, the context of Sanders's claims is particularly significant, as "[p]rison-based claims also present a risk of interference with prison administration." *Callahan*, 965 F.3d at 524. As the Sixth Circuit recognized in *Callahan*, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources"—all tasks that

11

fall "peculiarly within the province of the legislative and executive branches." *Id.* (quoting *Turner v. Safley*, 107 S. Ct. 2254, 2259 (1987)). Thus, "[g]iven the array of challenges facing prison administration and the complexity of those problems, 'separation of powers concerns counsel a policy of judicial restraint,'—counsel in favor in other words of the judiciary not creating new causes of action in this area." *Id.* (citation omitted) (quoting *Turner*, 107 S. Ct. at 2259).

An action here would open a broad new area of regulation through litigation. Any inmate with a known medical limitation could sue prison officials for any placement, assignment, or housing decision that arguably implicates or causes an effect based on such limitation. That taxing result would implicate every BOP facility from top to bottom. The Court flatly rejects that impactful step. *See Sargeant*, 87 F.4th at 367 (noting that courts are "ill-positioned to assess" the housing policies implicated by recognizing failure-to-protect claims based on "cell assignments").

The Supreme Court has instructed that "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a [new] *Bivens* remedy." *Egbert*, 142 S. Ct. at 1803 (quoting *Hernández*, 140 S. Ct. at 743). Because multiple factors counsel strongly against implying a *Bivens* remedy here, the Court **DISMISSES** Sanders's constitutional claims for damages against Sumner, Keith, and VanHook.

### 2. Statute of Limitations

Defendants argue, in the alternative, that Sanders's constitutional claims should be dismissed because they are barred by the statute of limitations. Although Sanders has conceded this point by failing to respond to Defendants' argument, *see Notredan, LLC v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013), the Court has considered the matter and agrees that Sanders's constitutional claims are untimely.

*Bivens* claims have a one-year statute of limitations under Kentucky law. *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003). Although state law determines the limitations period, federal law says that the cause of action accrues on the date a plaintiff knows or has reason to know that the act providing the basis of injury has occurred. *See Hawkins v. Spitters*, 79 F. App'x 168, 169 (6th Cir. 2003) (finding Eighth Amendment claim based on denial of plaintiff's requests for sleep evaluation accrued when the requests were denied, not when plaintiff was subsequently diagnosed with sleep apnea). Thus, Sanders's cause of action against VanHook accrued on April 10, 2022—the day he allegedly fell when she rushed him down the stairs. *See* DE 5 at 3. It is unclear whether Sanders alleges any other injury due to being housed on an upper level of the facility. Regardless, any claims against Sumner and Keith arising from Sanders's housing assignment must have accrued by February 1, 2023, as Sanders had been moved to a lower-tier cell by that date. Thus, his *Bivens* claims, first filed in this Court on April 26, 2024, are untimely and must be dismissed with prejudice.[3]

### B. FTCA Claim

Sanders's FTCA claim also is time-barred. Title 28 U.S.C. § 2401(b) provides:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless [the] action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

---

[3] The applicable limitations period is tolled while a prisoner pursues his administrative remedies. *See Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012). However, Sanders does not allege any basis for tolling the statute of limitations and does not appear to have pursued administrative remedies with respect to the claims at issue. Sanders fully exhausted one administrative remedy on January 31, 2023, (Remedy ID# 1130507) in which he complained that he received inadequate medical care after his fall on April 10, 2022. *See* DE 26-6 at 1 (Central Office Denial). Sanders did not report that VanHook (or anyone else) rushed him down the stairs, and he never filed an administrative remedy request for or grievance addressing a lower-level cell. *See* DE 26-2; DE 26-6 (Administrative Remedy Packet). Thus, whether measured by the lone exhausted claim or by the most liberal accrual date, Sanders's April 2024 complaint came too late.

13

A plaintiff must satisfy both time limitations to bring an FTCA suit in district court. *See Ellison v. United States*, 531 F.3d 359, 361 (6th Cir. 2008); *see also* 28 C.F.R. § 14.9(a) ("Final denial of an administrative claim shall be in writing and sent to the claimant . . . by certified or registered mail . . . and shall include a statement that, if the claimant is dissatisfied with the agency action, he may file suit in an appropriate U.S. District Court not later than 6 months after the date of mailing of the notification.").

In March 2023, Sanders submitted a timely administrative tort claim regarding his fall down the stairs on April 10, 2022. *See* DE 26-7 (Standard Form 95). His claim was denied by a final letter dated August 30, 2023, sent via certified mail and received by Sanders on September 5, 2023. *See* DE 26-8 (Letter and Certified Mail Receipt). Sanders's Complaint, filed more than seven months later, is untimely per 28 U.S.C. § 2401(b).

While the FTCA's limitations period is not jurisdictional, *Wershe v. City of Detroit, Mich.*, 112 F.4th 357, 366 (6th Cir. 2024) (citing *United States v. Wong*, 135 S. Ct. 1625 (2015)), Sanders did not respond to Defendants' argument that his FTCA claim is untimely and, therefore, provides no justification for which tolling might apply. Accordingly, the Court **DISMISSES** Sanders's FTCA claim **with prejudice**.

### C. BOP Duties [18 U.S.C. § 4042(a)]

Sanders alleges that Defendants violated 18 U.S.C. § 4042(a)(1)–(3). However, this statute establishes general duties of the BOP and does not provide a private cause of action against BOP officials. *See Nwaebo v. Hawk-Sawyer*, 100 F. App'x 367, 369 (6th Cir. 2004) (citing *Harper v. Williford*, 96 F.3d 1526, 1528 (D.C. Cir. 1996); *see also Chinchello v. Fenton*, 805 F.2d 126, 134 (3d Cir. 1986); *Williams v. United States*, 405 F.2d 951, 954 (9th Cir. 1969)). Accordingly, the

Court **DISMISSES** Sanders's claims asserted under 18 U.S.C. § 4042 **with prejudice**. *See* 28 U.S.C. §§ 1915(e)(2), 1915A.

### D. Injunctive Relief

Finally, the Court turns to Sanders's requests for injunctive relief. Although plaintiffs can seek injunctive relief for constitutional harms under 28 U.S.C. § 1331 and 5 U.S.C. § 702, the relief Sanders seeks here is improper. First, an inmate's sentence can be modified only in very limited circumstances, and any such requests must be made to the sentencing court. *See* 18 U.S.C. § 3582(c). Second, as noted in DE 11, to the extent Sanders seeks removal of Defendants from their positions at USP McCreary, an inmate's request for injunctive relief concerning prison conditions typically becomes moot when he is transferred away from the institution where the complaint arose. *See, e.g., Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010). Moreover, the Court has no authority to order that Defendants be terminated from their employment. *See Williams v. Maynard*, No. 23-cv-1320, 2023 WL 3674332, at *1 n.3 (E.D. Pa. May 25, 2023) (collecting cases). The Court accordingly **DENIES** Sanders's requests for injunctive relief.

## IV. CONCLUSION

Based on the foregoing, the Court hereby:

1. **GRANTS** Defendants' motion to dismiss or, in the alternative, for summary judgment (DE 26).

2. **DISMISSES** Sanders's Complaint (DEs 1, 5, 9, 12) **with prejudice**.

3. The Court will enter a corresponding Judgment.

This the 15th day of May, 2025.



Signed By:
*Robert E. Wier*
**United States District Judge**

15